FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 AUG 21  PM 3: 01

CLERK
SO. DIST. OF GA.

### IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA AUGUSTA DIVISION

| | | |
|---|---|---|
| FRANK RAYKOVITZ, Individually and for Others Similarly Situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 119-137 |
| ELECTRICAL BUILDERS, INC., | * * | |
| Defendant. | * | |

## O R D E R

Before the Court is Defendant Electrical Builders, Inc.'s ("Defendant") motion to dismiss or, alternatively, transfer. (Doc. 20.)   For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Defendant, headquartered in St. Cloud, Minnesota, claims to be "the nation's premier industrial electrical and welding contractor." (Compl., Doc. 1, ¶¶ 9, 16 (internal quotation marks omitted).)   From September 2018 until May 2019, Plaintiff worked for Defendant as "an Electrical Field Engineer and Superintendent" at its Plant Vogtle location in Waynesboro, Georgia. (Id. ¶¶ 17-19.)   In this capacity, Plaintiff "wrote the work packages and overs[aw] the installation of cabling for nuclear plants." (Id.

¶ 20.) Defendant hired Plaintiff to work for $65[1] per hour. (Offer of Employment, Doc. 20-2.)

While working for Defendant, Plaintiff provides that "[he] regularly worked over [forty] hours in a week," "[he] routinely worked [sixty] to [ninety] hours per week," and, "[i]f [he] worked fewer than [forty] hours in a week, he was only paid for the hours worked." (Compl., ¶¶ 23-25.) Plaintiff earned "the same hourly rate for the hours he worked over [forty] in a work week," which is generally referred to as receiving "straight time" for overtime. (See id. ¶¶ 26, 30.)

On August 22, 2019, Plaintiff filed the present action claiming Defendant "failed to pay [Plaintiff] and other workers like him[] overtime as required by the Fair Labor Standards Act ([']FLSA[')]."[2] (Id. ¶ 1.) Plaintiff originally brought this suit individually and for others similarly situated.[3] (Id. at 1; see also id. ¶ 1.) On July 10, 2020, Plaintiff filed a notice that he "only intends to pursue his individual claims against

---

[1] Plaintiff alleges his hourly rate spanned from $55 to $75. (Compl., ¶ 27.) Defendant counters that the lowest it paid Plaintiff was $65. (Def.'s Mot. to Dismiss, Doc. 20, at 7 n.1.) For reasons discussed in Section III(A)(1), infra, the Court may examine certain external exhibits, and those exhibits reveal Plaintiff's pay ranged from $65 to $75 per hour. (See Offer of Employment, Doc. 20-2, at 2; see generally Pay Stubs, Doc. 20-4.) The Court analyzes the motion to dismiss assuming Plaintiff's lowest hourly rate was $65.

[2] Under the FLSA, a qualified employee must be paid "not less than one and one-half times the regular rate at which he is employed" for hours worked above forty in a week. 29 U.S.C. § 207(a)(1). This "time-and-a-half" pay structure is generally referred to as "overtime." See, e.g., Bautista Hernandez v. Tadala's Nursery, Inc., 34 F. Supp. 3d 1229, 1235, 1240 (S.D. Fla. 2014).

[3] Two employees filed notices of consent (Docs. 17, 48), but both later withdrew their consents. (Docs. 49, 51.)

[Defendant]"; he "does not intend to seek to represent a collective through this action."[4] (Notice of Withdrawal of Collective Action Allegations, Doc. 52; see also Notice of Mootness, Doc. 53, ¶ 10; Notice of Withdrawal of Mot. for Conditional Certification, Doc. 50.)  It is improper to withdraw a portion of the claims in a complaint in this manner.  See Perry v. Schumacher Grp. of La., 891 F.3d 954, 958 (11th Cir. 2018).  Given, however, the pending motion to dismiss, the Court treats Plaintiff's notices as a withdrawal of his opposition to Defendant's motion to dismiss Plaintiff's collective action allegations.  Finding this portion of Defendant's motion to dismiss unopposed, the Court **GRANTS IN PART** Defendant's motion to dismiss as to Plaintiff's collective action allegations.

The Court now analyzes Defendant's pending motion to dismiss or, alternatively, motion to transfer with respect to Plaintiff's remaining individual claim.  Plaintiff filed a response (Pl.'s Resp. Opp'n Mot. to Dismiss, Doc. 25), and Defendant filed a reply (Def.'s Reply Supp. Mot. to Dismiss, Doc. 34).  Defendant's motion is apt for consideration.

---

[4] To this end, Plaintiff withdrew his motion to conditionally certify a class (Mot. to Conditionally Certify Class, Doc. 35). (Notice of Withdrawal of Mot. for Conditional Certification.)  The Clerk is **DIRECTED** to **TERMINATE** Plaintiff's motion to conditionally certify a class (Doc. 35).

## II. LEGAL STANDARD

### A. Motion to Dismiss and Extrinsic Documents

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice" of both the claim and the supporting grounds. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555). Furthermore, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,[5] to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[5] The court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom "in the light most favorable to the plaintiff." <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1261 (11th Cir. 2006) (citation omitted). Conclusory allegations, however, "are not entitled to an assumption of truth — legal conclusions must be supported by factual allegations." <u>Randall v. Scott</u>, 610 F.3d 701, 709-10 (11th Cir. 2010).

defendant is liable for the misconduct alleged." Id.  The court may not reasonably infer the defendant is liable when the well-pleaded facts fail to show "more than the mere possibility of misconduct." Id. at 679; see Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012) ("[F]actual allegations must be enough to raise a right to relief above the speculative level.") (citation omitted).

Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(6), the district court generally may not consider materials outside of the four corners of the complaint without converting it into a motion for summary judgment. See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010); Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005).  But a court may consider a document attached to a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); accord Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1285 (11th Cir. 2007) (considering document attached to motion to dismiss because "it [was] referred to in the complaint, it [was] central to [the plaintiff's] . . . claim, . . . and neither party challenge[d] its authenticity").

5

**B. Transfer**

Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   Relevant factors for deciding a motion to transfer include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).   Generally, a plaintiff's choice of forum is accorded considerable weight under a section 1404(a) analysis. Weintraub v. Advanced Corr. Healthcare, Inc., 161 F. Supp. 3d 1272, 1284 (N.D. Ga. 2015) (citing SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100–01 (11th Cir. 2004) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).   Where a forum selection clause governs the dispute, however, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 64 (2013).   That is so because "[w]hen

parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id.

### III. DISCUSSION

The Court analyzes Defendant's motion as to its (A) request to dismiss and (B) alternative request to transfer.

**A. Motion to Dismiss**

In deciding Defendant's motion to dismiss, the Court begins by analyzing whether it may consider certain extrinsic documents.

1. Extrinsic Documents

Defendant attaches several exhibits to its motion: Plaintiff's offer of employment; Plaintiff's time sheets (Time Sheets, Doc. 20-3); and Plaintiff's pay stubs. Each document is central to Plaintiff's FLSA overtime claim — which revolves around Plaintiff's rate of pay, the hours he worked, and the compensation he received for those hours. Plaintiff not only fails to dispute the authenticity of these exhibits, but also cites to the offer of employment and time sheets in his response. (Pl.'s Resp. Opp'n Mot. to Dismiss, at 4-5.) Thus, the Court considers these exhibits in ruling on Defendant's motion to dismiss.

2. <u>Dismissal</u>

A plaintiff's burden "to state a claim of a FLSA violation [is] quite straightforward." <u>Sec'y of Labor v. Labbe</u>, 319 F. App'x 761, 763 (11th Cir. 2008). "The elements that must be shown are simply a failure to pay overtime compensation. . . ." <u>Id.</u> (finding complaint stated a claim under the FLSA when it alleged the plaintiff was a covered employer and alleged the employer repeatedly failed to pay overtime over a specific period). To survive a motion to dismiss a FLSA overtime claim, a plaintiff must show that "(1) he is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay him . . . overtime wages." <u>Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.</u>, 494 F. App'x 940, 942 (11th Cir. 2012) (citing <u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)).

There is little dispute that Plaintiff meets the elements of his prima facie case: Plaintiff is employed by Defendant (Compl., ¶ 6; Pl.'s Resp. Opp'n Mot. to Dismiss, at 4 (citing Offer of Employment, at 2)); Defendant engaged in interstate commerce (Compl., ¶¶ 13, 16); and Defendant failed to pay him overtime wages and, instead, paid him straight time for overtime (Compl, ¶¶ 24-26; Pl.'s Resp. Opp'n Mot. to Dismiss, at 5 (citing Time Sheets).) Defendant mainly argues that Plaintiff's individual FLSA claim should be dismissed because Plaintiff is an exempt employee.

8

(Def.'s Mot. to Dismiss, at 7-10.)   Specifically, Defendant argues Plaintiff was exempt as one "employed in a bona fide executive, administrative[,] or professional capacity" and a "highly compensated" employee.   (Id. at 7.)   According to Defendant, Plaintiff "fails to allege he was a non-exempt employee." (Id. at 10.)

The Parties agree that an employee's exempt status is an affirmative defense and, generally, an affirmative defense will not support a motion to dismiss because a plaintiff is "not required to negate an affirmative defense in [his] complaint." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted); (Pl.'s Resp. Opp'n Mot. to Dismiss, 3-4; Def.'s Reply Supp. Mot. to Dismiss, at 2-3.)   Dismissal based on an affirmative defense can be proper but only if the defense "clearly appears on the face of the complaint." Lambiase v. DPT Kennedy Inc., No. 8:15-cv-2009-T-30TBM, 2015 WL 8324568, at *2 (M.D. Fla. Dec. 9, 2015) (quoting Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984)); (see also Pl.'s Resp. Opp'n Mot. to Dismiss, 3-4; Def.'s Reply Supp. Mot. to Dismiss, at 2-3.)   Defendant, as the employer, carries the burden of proof to show an FLSA exemption applies to Plaintiff.   Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).   Further, the Court must "narrowly construe exemptions to the FLSA overtime requirement." Morgan, 551 F.3d at 1269.

At the outset, the Court finds Plaintiff's salary level activates the highly compensated employee exemption.[6]  29 C.F.R. § 541.601(a), (b) (2016); see 29 U.S.C. § 213(a)(7) (2018).  The Parties agree.  (Pl.'s Resp. Opp'n Mot. to Dismiss, at 4; Def.'s Reply Supp. Mot. to Dismiss, at 3.)  As such, the Court focuses on whether Defendant shows the highly compensated exemption is satisfied.[7]

Under the highly compensated exemption, an employee is exempt if he receives the designated salary level as his "total annual compensation" and he "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative[,] or professional employee."  29 C.F.R. § 541.601(a)(1) (2016).  "Total annual compensation" requires the

---

[6] A prior version of the regulation covered Plaintiff while he worked for Defendant.  See 29 C.F.R. § 541.601(a)(2) (June 8, 2020).  As such, the Court applies the version of the regulation applicable to Plaintiff's claim, which designated the requisite salary level as $134,004.  29 C.F.R. § 541.601(b) (2016) (effective Dec. 1, 2016, through Dec. 31, 2019).  From August 26, 2018, to May 22, 2019, Plaintiff earned $167,175 in gross pay (Pay Stubs); thus, Plaintiff's total annual compensation while working for Defendant exceeded the requisite amount.  See 29 C.F.R. § 541.601(b)(3) (2016).  It is common for employees to earn more than the minimum defined within the FLSA; "overtime cases generally turn on the defined duties of an employee and whether the employer's method of compensation is consistent with payment on a salary basis."  Garrett Reid Krueger, Comment and Note, Straight-Time Overtime and Salary Basis: Reform of the Fair Labor Standards Act, 70 WASH. L. REV. 1097, 1101 (1995).

[7] "A high level of compensation is a strong indicator of an employee's exempt status."  29 C.F.R. § 541.601(c) (2016).  As such, the regulation provides that "a highly compensated employee will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative[,] or professional employee." Id.  For the reasons contained herein, the Court finds Defendant has failed to prove either the salary-basis or duties elements required under the highly compensated exemption.  Consequently, Defendant also cannot prove, at this juncture, that Plaintiff is exempt as an executive, administrator, or professional.

employee to be "paid on a salary . . . basis as set forth in § 541.602."[8]  29 C.F.R. § 541.601(b)(1) (2016).  Thus, Defendant proves Plaintiff is an exempt highly compensated employee if it shows Plaintiff (1) was paid on a salary basis and (2) performed one or more of the requisite duties.  Pioch v. IBEX Eng'g Servs., Inc., 825 F.3d 1264, 1271 (11th Cir. 2016) (citing 29 C.F.R. §§ 541.600, 541.602, 541.700).

    a. *Salary-Basis Test*

    An employee is paid on a "salary basis" when he "regularly receives each pay period[,] . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).  Earnings computed on an hourly basis do not necessarily violate the salary basis requirement.  See 29 C.F.R. § 541.604(b).  And payments in addition to the salary are not inconsistent with payment on a salary basis; "[t]he regulation prohibits only 'reductions' due to 'variations in the quality or quantity of the work performed.'"  Acs v. Detroit Edison Co., 444 F.3d 763, 768 (6th Cir. 2006) (emphasis omitted) (quoting 29 C.F.R. § 541.118(a) (prior version of section 541.602)).

---

[8] Total annual compensation may also be satisfied if paid on a fee basis, but no party suggests Defendant paid Plaintiff on a fee basis.  29 C.F.R. § 541.601(b)(1) (2016).

11

For the reasons stated previously,[9] the Court assumes Plaintiff was paid at a rate of $65 to $75 per hour. Plaintiff's complaint states he was "an hourly employee," "reported the hours he work[ed] to [Defendant] on a regular basis," "was not guaranteed a salary," "was only paid for the hours worked" even if "fewer than [forty] hours in a week," "regularly worked over [forty] hours in a week," and "[r]ather than receiving time[-]and[-a-]half as required by the FLSA," was paid "the same hourly rate for the hours he worked over [forty] in a work week." (Compl., ¶¶ 6, 21-24, 26, 30.)

Defendant cites to one of Plaintiff's pay stubs from 2019 reflecting two payment types – "Salary – Direct" and "ST – Hourly" — apparently to show Plaintiff was guaranteed a salary for fifteen hours of work not subject to deductions. (Def.'s Reply Supp. Mot. to Dismiss, at 3 (citing Pay Stubs, at 33).) Although true that being guaranteed pay for fifteen hours may potentially satisfy the salary-basis requirement, the available evidence shows the fifteen-hour salary pay began on March 25, 2019; there is no evidence of any guaranteed fifteen hours of pay prior to March 25th. (Compare Pay Stubs, at 2-30, with id. at 31, 33, 35-38, 40.) Furthermore, the pay stubs reveal no designated fifteen-hour

---

[9] See, *supra*, note 1.

salary pay when Plaintiff worked 82.50 hours from April 1, 2019, to April 7, 2019.  (Pay Stubs, at 32.)

In general, Plaintiff's pay stubs reflect pay in proportion to the hours worked.  (See generally Pay Stubs.)  Most importantly, Plaintiff's pay stubs show his pay was subject to reductions — when Plaintiff worked less than forty hours from September 2, 2018, to September 8, 2018, he received payment in accordance with the reduced hours.  (Pay Stubs, at 3 (38 hours).[10])  As such, Defendant fails to carry its burden, at this stage, to prove Plaintiff was paid on a salary basis.

b.    *Duties Test*

The Court now turns to the duties test.  As stated above, a highly compensated employee regularly performs a duty of an executive, administrator or professional.  An executive is one "[w]hose primary duty is management . . . ; [w]ho customarily and regularly directs the work of two or more other employees; and [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations [on those matters] . . . are given particular weight."    29 C.F.R. § 541.100(a)(2)-(4).    An administrator is one "[w]hose primary duty is the performance of office or non-manual work directly related to the management or

---

[10] Defendant states Plaintiff "never worked less than [forty] hours" (Def.'s Reply Supp. Mot. to Dismiss, at 3; see also id. at 4), but the Pay Stubs Defendant provided reflect at least one occasion where Plaintiff worked less than forty hours, as cited.

13

general business operations . . . . ; and [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."[11]  29 C.F.R. § 541.200(a)(2)-(3).

As discussed above, Plaintiff is not required to counter Defendant's affirmative defenses in his complaint as Defendant seems to suggest.  (See Def.'s Mot. to Dismiss, at 8.)  Defendant wishes the Court to dismiss Plaintiff's complaint for not including more detail about "what he did for [Defendant] and what his job duties entailed."  (Id.)  Plaintiff's complaint avers he is "an Electrical Field Engineer and superintendent" for Defendant and "wrote the work packages and overs[aw] the installation of cabling for nuclear plants."  According to Plaintiff, these job duties are "nonexempt" and "fatal to [Defendant]'s claim that [Plaintiff] failed to allege he was not exempt from the FLSA."  (Pl.'s Resp. Opp'n Mot. to Dismiss, at 5.)  Defendant counters that "[s]everal federal [c]ourts of [a]ppeal have agreed that work package planners perform nonexempt, administrative duties and consequently are exempt from the FLSA's overtime protections."  (Def.'s Reply Supp. Mot. to Dismiss, at 4-5.)

Defendant's cited cases were decided on summary judgment and contemplated numerous facts gathered during discovery reflecting

---

[11] The Court declines to analyze whether Plaintiff satisfies the professional exemption because Defendant fails to offer evidence or argument supporting that position.

14

the plaintiffs' daily duties.   (See id. at 5.)   It is also unknown to the Court whether Plaintiff's primary duties reflect those of a work package planner.   In addition, Defendant provides, "All members of the executive, operations leadership, and human resources teams live and work in Minnesota. . . . [Defendant] makes all decisions regarding project staffing, compensation, and other employment determinations in Minnesota.   All payroll and other employment-related records are created and controlled by our human resources personnel located here in Minnesota."   (Def.'s Mot. to Dismiss, at 3-4.)   Plaintiff is apparently at least not part of that group of executives and administrators because he worked out of Plant Vogtle in Georgia.   Given the limited facts currently before the Court, Defendant fails to carry its burden of showing it is clear from Plaintiff's complaint that he is an exempt employee.

## B. Motion to Transfer

As an alternative request, Defendant argues the Court should transfer this action to the District of Minnesota.   (Id. at 19-22.)   Defendant argues the Parties signed a forum selection clause designating the United States District Court for the District of Minnesota as the proper forum.   (Id. at 19, 20-21.)   The initial issue for the Court is not whether the forum selection clause is enforceable, rather, whether it is applicable to the present action.

1. <u>Existence of an Applicable Forum Selection Clause</u>

The forum selection clause cited by Defendant is contained within the "Nondisclosure, Nonsolicitation, and Non[]compete Agreement" entered into and separately signed by the Parties, which the Parties refer to as the "Agreement."[12] ("Restrictive Covenant Agreement," Doc. 20-5, at 2, 5, 6.)   The forum selection clause specifies that it covers "[t]his Agreement." (<u>Id.</u> ¶ 8.2.)   There is no overt mention of the Restrictive Covenant Agreement or forum selection clause applying to a separate employment agreement or the general employment relationship between the Parties.

Defendant argues Plaintiff's FLSA claim triggers the forum selection clause due to the following language: "Any dispute arising under or in connection with this Agreement or related to any matter which is the subject of this Agreement shall be subject to the exclusive jurisdiction of the state and/or federal courts in the State of Minnesota." (<u>Id.</u>)   On that language, Defendant argues, "The Agreement pertains to any matter connected or related to [Plaintiff]'s 'employment relationship' with [Defendant]." (Def.'s Reply Supp. Mot. to Dismiss, at 14.)

Defendant, as the proponent of the forum selection clause, draws a conclusory line from the Restrictive Covenant Agreement to

---

[12] The Court may analyze the Restrictive Covenant Agreement to address the motion to transfer venue.   <u>See, e.g.</u>, <u>Daoud Inv. Holdings, Inc. v. Cole</u>, No. 15-62014-CIV-COHN/SELTZER, 2015 WL 12743767, at *1, *2 (S.D. Fla. Oct. 30, 2015) (analyzing the parties forum selection clause in deciding motion to transfer venue).

the entire employment relationship. It is not obvious how the current FLSA dispute is "in connection with" the Restrictive Covenant Agreement. Although the "[Restrictive Covenant] Agreement is an express condition of [Defendant]'s offer of employment to [Plaintiff]," the purpose of the Restrictive Covenant Agreement is "[Defendant's] desire[] to protect and safeguard the legitimate interests of its business including, but not limited to [Defendant]'s goodwill with its customers, trade secrets, customer information, and confidential information." (Restrictive Covenant Agreement, at 1.) To that end, the subject of the Restrictive Covenant Agreement is explicitly protecting Defendant's trade secrets, intellectual property, and customers. Furthermore, the integration provision within the Agreement provides: "[T]his Agreement embodies the entire agreement and understanding among the parties relative to the subject matter hereof" (id. ¶ 8.1); once again, reinforcing that the Restrictive Covenant Agreement is limited to the above-outlined subject matter.

Seemingly recognizing Plaintiff's complaint fails to trigger the Restrictive Covenant Agreement, Defendant offers that it intends to bring a counterclaim raising breach of the noncompete agreement. (Def.'s Reply Supp. Mot. to Dismiss, at 14.) Although a noncompete claim could trigger the Restrictive Covenant

17

Agreement, as this action currently stands, the Court finds no reason why the forum selection clause applies.

2. <u>Transfer Under 28 U.S.C. § 1404</u>

Sans a forum selection clause, the Court analyzes Defendant's request to transfer under 28 U.S.C. § 1404. As stated above, because no forum selection clause applies, Plaintiff's choice of forum is given considerable weight. Defendant, as the party seeking transfer, carries the burden of showing the factors favor the move. <u>In re Ricoh Corp.</u>, 870 F.2d 570, 573 (11th Cir. 1989). According to Defendant, "[T]he totality of the circumstances support transfer." (Def.'s Mot. to Dismiss, at 21.) Specifically, Plaintiff is "a citizen and resident of Florida," so "[t]he Southern District of Georgia is no more convenient for [Plaintiff] . . . to travel to than any other." (<u>Id.</u>) The majority of the relevant witnesses and documents are within Minnesota. (<u>Id.</u>) Lastly, Minnesota courts are more familiar with Minnesota law pertaining to non-compete agreements under which Defendant "intends to bring a breach of non-compete counterclaim." (<u>Id.</u> at 21, 22.)

It is true that Plaintiff must travel regardless of whether the Court transfers venue. Given, however, that Florida borders Georgia, the Court disagrees with Defendant that travelling to Georgia is no more convenient for Plaintiff than Minnesota. As to Defendant's second argument, it is likely that Georgia — where

18

Defendant worked — and Minnesota — where Defendant makes its employment and administrative decisions — both house witnesses and documents.    Third, there is no current claim that Plaintiff breached the non-compete agreement.  The pending claim is limited to an individual FLSA claim.  As acknowledged by Defendant, a district court in Minnesota is no better suited to address Plaintiff's federal claim than this Court.  (Id. at 22.)

After analyzing the factors Defendant raises to support transfer, the Court finds Defendant fails to carry its burden of showing the totality of the circumstances weighs in favor of transfer.

## IV. CONCLUSION

**IT IS HEREBY ORDERED,** Defendant's motion to dismiss or, alternatively, transfer (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART.**  Defendant's motion to dismiss is **GRANTED** as to Plaintiff's collective action allegations, and those allegations are **DISMISSED WITHOUT PREJUDICE.**  Defendant's motion to dismiss as to Plaintiff's individual allegations and to transfer venue is **DENIED.**  This action **SHALL** remain in this Court.  Only Plaintiff's individual FLSA claim remains.  Lastly, the Court **DIRECTS** the Clerk to **TERMINATE** Plaintiff's motion for conditional certification.  (Doc. 35.)

**ORDER ENTERED** at Augusta, Georgia, this 21ST day of August, 2020.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA